## AMERICAN HORSE EXCH. CO. v. NAUGHTON CO.

(Supreme Court, Appellate Term. January 17, 1906.)

TRESPASS—INJURY TO PROPERTY—EVIDENCE.

Where, in an action for injuries to plaintiff's building, it was proved that the work in the course of which the injuries occurred was done under the direction of an engineer, who was employed by defendant corporation and who directed the work for it, such proof, in the absence of evidence that the injuries were the result of the acts of a partnership which was succeeded by the corporation, as claimed by defendant, was prima facie sufficient to establish a liability against defendant.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by the American Horse Exchange Company against the Naughton Company. From a Municipal Court judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before SCOTT, P. J., and BLANCHARD and DOWLING, JJ.

Jay & Candler (Andrew F. Murray, of counsel), for appellant.
Benjamin Trapnell, for respondent.

SCOTT, P. J. The defendant is sued for damages for injury done to plaintiff's building as a result of work done under a subcontract for the construction of a subway station. The plaintiff's premises are situated at Broadway and Fiftieth street, and consist of a lot of land 170 by 200 feet, covered by a brick building ranging from two to four stories in height. A subway station was built at the corner, which

necessitated excavating in front of and under plaintiff's building, and this, in turn, necessitated shoring up the building. This shoring was done by the insertion of needles through the wall, four being inserted on the Broadway side and two on the Fiftieth street side, whereby six apertures were made in the walls, measuring about three feet by two. Six beams were also erected to support the upper stories, the ends being imbedded in the walls, making six more apertures of about the same size as the others. The bricks taken from these 12 openings were smoothly finished brick. When the work was finished and the needles and beams were removed, the subway contractor replaced them by rough, coarse brick, painted with white lead. In connection with the building of the subway station, a considerable quantity and variety of materials was used, such as sand, gravel, and cement. These were piled up against the Fiftieth street side of the plaintiff's building; the piles ranging in height from 7 to 10 feet. These materials were constantly being removed and replaced, and did much damage to the wall by way of scratching and discoloring the paint. After the shores had been removed the building settled somewhat, causing cracks which required repointing. The building had been thoroughly overhauled and painted about six months before the subway work began at this point. It was then painted yellow, with green trimmings. After the subway work had been completed the plaintiff deemed it necessary that the building should be repainted. There was some controversy whether or not it was necessary to repaint the whole building; the defendant contending that it would have been sufficient to repaint those portions only which were shown to have been injured. At the close of the plaintiff's case the learned justice announced that he would hold that plaintiff had shown an absolute necessity for the repairing of the whole structure. In this conclusion he was, as we think, entirely right, and the slight evidence afterwards introduced by defendant on this point was not sufficient to justify a contrary conclusion. The defendant did not attempt to question the reasonableness of the charge for repainting. We have, therefore, as facts established by the evidence, first, that the damage was caused by the acts of the subway contractors; second, that it was of such a nature as to necessitate a repainting of the whole structure; and, third, that the sum claimed by plaintiff represents the reasonable cost of such repainting. That the plaintiff repainted the building with a different color from that previously used is immaterial, since it is not shown that the change in color involved any additional expense.

The point most strenuously insisted upon by defendant is that the action should have been brought against a firm known as "Naughton & Co.," instead of this defendant, said to be a corporation. It is not contended that whoever was engaged in doing the work, whether firm or corporation, is not liable to the plaintiff for the damages occasioned by the work. If the work was really prosecuted by Naughton & Co., the firm, and not by Naughton Company, the corporation defendant here, nothing would have been simpler than for the defendant to have given clear and convincing evidence of that fact. Instead of doing so, it contented itself with relying upon the supposed weakness of plaintiff's proof to connect defendant with the work. The evidence

shows that the work in front of plaintiff's building was done in 1902 and 1903. There was introduced in evidence a contract between the chief contractor for the subway and Naughton & Co., as subcontractors, for the construction of the section covering that part of Broadway in front of plaintiff's premises. This contract was dated September, 1900. In the absence of any evidence to the contrary, the court might well have indulged in the presumption that the state of affairs created by this contract continued, and that Naughton & Co. remained subcontractors down to the time the work was done from which plaintiff suffered. Such a presumption, however, is liable to be overthrown by direct evidence of a different state of facts, and especially so with reference to contracts like those for the construction of the subway, which are subject to assignment and in point of fact are frequently assigned. Such direct evidence was furnished in this case by the defendant's engineer, who testified that he had charge and direction of the work, and that he was employed by Naughton Company, this defendant. This evidence was quite sufficient to rebut any presumption created by the contract of 1900, and to establish prima facie the fact that it was Naughton Company who did the work. Whether it was engaged in it as assignee of Naughton & Co., or as subcontractor under them, or how it had come to be engaged upon, it did not concern plaintiff, and was not for it to show. With the fact established that the work was done under the direction of an engineer who was employed by Naughton Company and who directed the work for it, the plaintiff had certainly shown prima facie that Naughton Company did the work which resulted in the damage. If the contrary was true, the defendant could easily have shown it, and as it made no effort to do so the fact as shown by plaintiff's evidence must be accepted as proven.

No probative force is to be given to the fact that some of the carts used in the work bore the name of Naughton & Co. That circumstance is sometimes accepted as against the person whose name thus appears as presumptive evidence of ownership, because frequently it is the only evidence of ownership available. But no case is to be found where the use of such a name has been accepted in favor of the person whose name is used, or to prove ownership in such person, when positive proof on the subject is available. In our opinion the evidence showed prima facie that defendant did the work in question; and, since no attempt was made to prove the contrary, that fact must be deemed established.

It follows that the judgment in defendant's favor was erroneous, and it must be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed, and a new **trial granted, with costs** to appellant to abide the event. All concur.